## Commonwealth v. Ambridge Borough

*Marvin A. Fein,* for Commonwealth.

*Peter P. Simoni, for defendant.*

KLEIN, J., May 16, 1972.—On October 25, 1971, a criminal complaint was filed by the Commonwealth of Pennsylvania, acting through the Department of

Environmental Resources, against defendant, Borough of Ambridge, in this county, charging said borough with two violations of the Clean Streams Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq., separately occurring on January 29, 1970, and February 8, 1971, respectively. Defendant borough waived a hearing before the justice of the peace on these summary offenses. A hearing was held before this court on April 7, 1972. From the record we make the following

## FINDINGS OF FACT

1. Defendant, Borough of Ambridge, neither owns nor maintains a sewer system or other facility through which flows sewage which then flows into the waters of the Commonwealth.

2. Defendant borough does not discharge nor permit the discharge of sewage in any manner, directly or indirectly, into the waters of the Commonwealth.

3. The sewer system and facilities involved in this case are owned, maintained and operated by the Borough of Ambridge Municipal Authority, which authority, as defendant borough is a "municipality" within the definitions set forth in said act: 35 PS §691.1, as amended.

4. All of the evidence submitted by the Commonwealth including the order of the department, the permit and the laboratory reports, Exhibits "1", "2", "3", and "4", are directed to and/or concern the Borough of Ambridge Municipal Authority and not defendant, Borough of Ambridge.

5. Residents of portions of the municipalities of the Township of Harmony in Beaver County, and the Township of Leet in Allegheny County discharge sewage into the sewer system of said authority and the same flows into the waters of the Commonwealth.

6. The result which the Commonwealth seeks to obtain by this action is deserving of the highest commendation.

7. The Commonwealth has available to it other procedures through which it may compel defendant borough to perform its part in the abatement of water pollution through sewage treatment to effect the purposes of the Clean Streams Law under penalties more severe than permitted by the summary offense proceeding pursued in the instant action.

## DISCUSSION

The Commonwealth, in its brief, correctly concedes that the offense charged as occurring on January 29, 1970, cannot be sustained against this defendant but contends that the alleged offense of February 8, 1971, is sustainable by virtue of the amendatory Act of July 31, 1970, P. L. 653, (No. 222) 35 PS §691.202. The argument leaves this court unconvinced and defendant must be found not guilty as to both of the alleged offenses.

The theory that said amendatory act established the basis for a successful prosecution of this defendant is submitted upon the following language:

"No municipality or person shall discharge or *permit the discharge of sewage* in any manner, *directly or indirectly,* into the waters of this Commonwealth unless such discharge is authorized by the rules and regulations of the board or such person or municipality has first obtained a permit from the department . . . *For purposes of this section, a discharge of sewage into the waters of the Commonwealth shall include a discharge of sewage by a person or municipality into a sewer system or other facility owned, operated or maintained by another person or municipality and*

*which then flows into the waters of the Common-
wealth . . ."* (Italics supplied.)

The previous law merely stated:

"Any municipality discharging sewage from a
sewer system *owned and maintained by the munici-
pality,* and any person discharging sewage into or in
any manner as to cause pollution of the waters of
this Commonwealth . . ." (Italics supplied.)

And we agree with the Commonwealth when, in its
brief, it said:

"It is clear that the legislature intended a different
result and different consequences in amending the
Act. It should also be quite clear that the intent was
to broaden the scope of the Act. That this intent was
to allow the Commonwealth to prosecute all munici-
palities discharging untreated sewage into any sew-
age system seems perfectly explicit . . .";

but the Commonwealth failed to prove that this de-
fendant borough was discharging any untreated sew-
age into any sewage system.

In support of its contention, the Commonwealth
cites section 51 of the Statutory Construction Act, 46
PS §551, "Construction of laws; legislative intent
controls," but passes over this vital portion thereof:

"When the words of a law are clear and free from
all ambiguity, the letter of it is not to be disregarded
under the pretext of pursuing its spirit."

It is obvious that the amendatory language relied
upon by the Commonwealth had as its intention bring-
ing into the purview of the provisions of the act those
municipalities which do not have terminal sewage
facilities, but whose sewer systems empty into the
system of another municipality as well as shopping
centers, residential developments, etc., with systems
of their own which empty into another system. This
case presents a perfect example. Under the old law

the municipalities of Harmony Township and Leet Township would be immune from prosecution while the Ambridge Authority could be prosecuted.

Since the record is devoid of any evidence that defendant borough discharges any sewage anywhere, and the words of the law are clear and free from ambiguity, there is no need to implement the legislative intention-determining provisions of section 51 of the Statutory Construction Act, supra.

Recognizing, as we have, the commendable purpose of this action, this court is nevertheless seriously troubled by the executive decision to pursue this course in disregard of the lack of legislative authority for same. This is particularly so because the Commonwealth has available to it other procedures carrying more severe penalties and, indeed, this court understands that the same are being concurrently pursued. See further said Act of July 31, 1970, supra.

In this case, the executive department has determined, with indubitable accuracy, that the Borough of Ambridge, through its council, is indirectly responsible for the failure to construct adequate sewage treatment facilities; and that the Borough of Ambridge Municipal Authority, through its board, is anxious to do what is required. (We note, parenthetically, that the Borough of Ambridge is motivated by another commendable policy, the prevention of increased taxation, and/or an increase in sewer rental fees, upon its citizens.)

However, it is the authority which owns and operates the sewage system; employs, directs and pays its employes; and controls in every respect the discharge of sewage into the waters of the Commonwealth. There was no evidence offered by the Commonwealth upon which it could be inferred that this

defendant "permitted" the discharge of sewage into the waters of the Commonwealth.

As serious as are the environmental problems facing this State and this nation, and as necessary as is the existence of effective laws to compel the abatement of pollution without undue delay, it is essential to the very existence of our form of government, that no encroachment upon the legislative power by the executive be countenanced for even a moment, no matter, the desirability of the proposed action.

The wisdom of the founding fathers of this Nation in establishing a system of checks and balances provided by three separate branches of government, which wisdom was followed by the framers of the Constitution of this Commonwealth, is not to be "waived" for the reason of achieving a highly commendable result.

"Although our Constitution does not expressly provide for the separation of the legislative, judicial and executive powers of government, they must be kept separate, and the power of each branch must be preserved . . .": P.L.E. Constitutional Law §31.

If there is a "gap" in the laws which may permit a "guilty" party to escape prosecution, the executive department should seek the enactment of the necessary corrective legislation, but may not usurp the legislative function and determine for itself whom it will prosecute and who will not be prosecuted, without foundation in the Acts of the General Assembly.

## CONCLUSIONS OF LAW

1. The Clean Streams Law of June 22, 1937, P. L.

1987, as amended, 35 PS §691.1, et seq., makes it a summary offense for any municipality to discharge or permit the discharge of sewage in any manner, directly or indirectly, into the waters of the Commonwealth; and that for the purposes of said law a discharge shall include a discharge by a municipality into a sewer system or other facility owned, operated or maintained by another municipality and which then flows into the waters of the Commonwealth.

2. The definition of "municipality" in The Clean Streams Law includes, inter alia, a borough, a township and a municipal authority.

3. The provisions of said act as to the discharge of municipal sewage does not include within its purview a municipality which does not own, operate or maintain a sewage system or sewage facility, and which does not discharge sewage into any sewage system of facility owned and/or operated by another.

4. Defendant, Borough of Ambridge, does not discharge sewage at all nor does it "permit" the discharge of sewage and, therefore, cannot be successfully prosecuted under the provisions of said law which is the basis for this summary offense and must be found not guilty.

5. The Clean Streams Law, supra, and other laws of the Commonwealth allow to the Commonwealth procedures to compel this defendant to participate in the abatement of the kind of pollution specified in this action.

## ORDER

And now, to wit, May 16, 1972, after hearing, and for the reasons stated in the foregoing opinion, defendant is adjudged not guilty as to both alleged offenses.